**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**IN RE YOUNG SIL GRANT**                    Case No. 04-37990-DOT
             Debtor-in-Possession            Chapter 11


**MEMORANDUM OPINION**

Prior to filing for bankruptcy protection, debtor Young Sil Grant entered into a sale and purchase agreement for the sale of land.  Mr. Khalad Shaban is the prospective vendee under the agreement.  This matter came before the court on debtor's motion to approve rejection of the agreement as an executory contract pursuant to 11 U.S.C. § 365(a).  Shaban filed a response and objection to debtor's motion.   An evidentiary hearing was held June 22, 2005, at which time the court took the issue under advisement.

For the reasons stated in this memorandum opinion, the court will deny debtor's motion to approve rejection of the executory contract.  This opinion constitutes the court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

On August 25, 2004, debtor Young Sil Grant filed a voluntary petition under Chapter 11 of the Bankruptcy Code and since that time has been operating her business as a debtor-in-possession.

Since 1998, debtor has owned six parcels of real estate located at 3410-3418 Jefferson Davis Highway and 2603-2605 Lamberts Avenue, City of Richmond, Virginia, which are used for various commercial purposes.  The parcels located at 3414-3418 Jefferson Davis Highway were previously operated as a convenience store, but debtor has recently been denied a Certificate of Occupancy from the City of Richmond, resulting in her inability to generate

income from the property either in the form of rents or income from the operation of the

business.  Debtor leases the premises at 3410-3412 Jefferson Davis Highway to Mr. Khalad

Shaban, who owns and operates a business known as Superior Outlet and Pawn Shop.  The rental

amount under the lease for this portion of the property is $1,600 per month, or $800 per address.

In addition, debtor leases storage units located at 2603-2605 Lamberts Avenue to Murray's, Inc.,

generating $950 per month in rental income.

During the period December 21, 2001, to June 2002, Shaban made unsecured loans to

debtor totaling $40,000.  By June 2002, none of the debts had been repaid.  Fearing the loans

would remain unpaid and having no recourse against debtor, Shaban negotiated with debtor to

purchase the Jefferson Davis Highway property.  Their agreement would permit Shaban to

convert the sums previously loaned to debtor into a deposit on the property. On August 26, 2002,

debtor as seller entered into a contract with Shaban dated June 26, 2002, for the purchase and

sale of real estate described as 3410-3418 Jefferson Davis Highway.   The contract stated a

purchase price of $300,000 and called for a $40,000 deposit upon signing, an amount

representing the sums previously loaned to debtor.[1]   The contract also contained a term allowing

the lease of the property located at 3414-3418 Jefferson Davis Highway to Jefferson Plaza for

use as a convenience store to remain intact.   The contract called for settlement within 30 days of

signing, but closing never occurred.  The parties were prevented from closing when they

discovered the Lamberts Avenue property could not be separated from the Jefferson Davis

Highway property because part of the improvements on the land occupied both properties, and

thus the properties were to be considered one inseparable parcel of real estate and sold as such.

The parties later entered into a contract dated June 24, 2003, for the sale and purchase of

both the Jefferson Davis Highway and Lamberts Avenue properties.  By this time, Shaban had

made a total of $130,800 in unsecured loans to debtor, which amounts were to be converted to a

---

[1] Although the contract did not specifically state that the loaned amounts would substitute for a cash deposit, the court relies on extrinsic evidence and finds this was the intent of the parties.

deposit on the property.[2]  The purchase price was increased to $375,000, and the sale was

contingent upon Shaban obtaining a conventional loan secured by a first deed of trust lien on the

property in the principal amount of $244,200, representing the balance due on the purchase price

once the deposit had been credited.  The contract relieved Shaban from paying rent to debtor

under his lease for 3410-3412 Jefferson Davis Highway and provided for an assignment of all

leases then existing on the properties to Shaban.  It further provided for the sale of the

refrigerator units located on the Lamberts Avenue property, which were being used for cold

storage by Murray's, Inc.  Consistent with the 2002 contract, an additional term in the 2003

contract called for the simultaneous lease to seller of the premises at 3414-3418 Jefferson Davis

Highway for use as a convenience store.  In addition to amounts delineated as rent payable for

lease of the property, seller would be required to pay one half of the annual real estate taxes and

other assessments on this portion of the property.  The contract further provided that settlement

was to occur on or before August 18, 2003.

Settlement did not occur by August 18, 2003, and the parties have yet to close the sale.

However, after the contract had been signed and according to its terms, Shaban ceased payment

of rents to debtor under his lease on the property located at 3410-3412 Jefferson Davis Highway.

At the time of hearing in June 2005, Shaban had not paid rent for 36 months, yielding a total of

$57,600.00 in unpaid rent.

On November 1, 2003, Shaban filed a Bill of Complaint to enforce the 2002 contract in

the Circuit Court of the City of Richmond, Chancery No. CH03-1757-4.  Although the Bill of

Complaint referenced the 2002 contract, the terms Shaban sought to enforce were those of the

2003 contract.  Debtor failed to plead, answer, or demur.  On December 9, 2003, Shaban moved

for default judgment against debtor in order to enforce his Bill of Complaint.  Debtor did not

make an appearance, and on January 6, 2004, the court entered a decree ordering specific

_____

[2] As with the 2002 contract, this was not a term within the four corners of the contract, but the court finds this was the parties' intent.

performance of the June 26, 2002, contract.  The court ordered debtor, upon receipt of the

contract price, to deliver to Shaban a bill of sale for the refrigerator units along with a good and

sufficient deed to the Jefferson Davis Highway and Lamberts Avenue properties.  Debtor was

also required to deliver an assignment of leases currently in existence.[3]

Subsequently, debtor took steps to comply with the court order.  She signed and delivered

a deed to the properties dated September 23, 2003.  Shaban neither accepted nor recorded the

deed.  Debtor then signed and delivered an Assignment of Lease dated June 23, 2004, at which

point Shaban entered into possession and began collecting rents from Murrays, Inc.  At the time

debtor's motion came before the court in June 2005, Shaban had received 13 months rental

income totaling $12,350.  Moreover, debtor tendered two checks in the amount of $1,600, each

representing a month's rental payment for the lease of 3414-3418 Jefferson Davis Highway

premises.  When presented, the bank refused to honor the checks due to insufficient funds in

debtor's account, and thus Shaban never received the money.

Debtor is unable to deliver clear and marketable title.  The properties are subject to two

liens in favor of LSR, LLC and Bank of McKenney, which had combined payoffs in June 2005

totaling $371,171.01.[4]  Assuming Shaban is to receive a credit for the unsecured loans made to

debtor against the sales price, the liens exceed the total amount of cash due seller at closing,

meaning debtor would need to produce cash at closing to pay off the lienholders in order to

deliver clear title as specified by the Circuit Court's decree.  Debtor has been unable to procure

the necessary funds and as such has been unable to consummate the sale.  Furthermore, Shaban

---

[3] The Circuit Court ordered performance of the terms in the 2003 contract, including payment of the $375,000
purchase price.  This court finds that although the Circuit Court referred to the 2002 contract in its decree of specific
performance, the Circuit Court's order related to the 2003 contract to sell real estate.  The court further finds the
decree was not obtained by fraud or mistake as debtor argues and cannot be set aside pursuant to VA. CODE § 8.01-
428 as debtor would contend.
[4] Both creditors have requested, and the court has granted, relief from the stay.   The court conditioned the stay with
respect to Bank of McKenny allowing for its termination in the event creditor did not receive arrearage payments by
March 25, 2005, and further allowing for automatic termination in the event of default and no cure within ten days of
default.  The court signed a consent order in favor of LSR, LLC entitling creditor to immediate relief from the stay
without further notice in the event a sale of the properties is not consummated and proceeds used to pay its debt in
full by August 31, 2005.

has not closed on a loan to finance the remainder of the purchase price and has not tendered the

consideration recited in the 2003 contract.

Discussion and Conclusions of Law

For this chapter 11 case the court must decide the following issues: (1) whether the

Circuit Court's order of specific performance on the real estate contract dated July 26, 2002,

terminated the executory contract; and (2) whether the bankruptcy court should allow debtor to

relitigate the Circuit Court proceeding.

1.The contract for sale and purchase has been reduced to judgment and is therefore not an

executory contract that debtor can reject.

Debtor argues that the contract for purchase and sale is executory and thus capable of

rejection pursuant to 11 U.S.C. § 365(a).  The Bankruptcy Code does not define the term

executory contract, but the U.S. Supreme Court found Congress intended the term to mean a

contract "on which performance is due to some extent on both sides."  NLRB v. Bildisco and

Bildisco, 465 U.S. 513, 520 n.6 (1984) (quoting H.R. REP. NO. 95-595, p. 347 (1977)).  The

Fourth Circuit has adopted the Countryman test, a more specific test for determining whether a

contract is executory.  See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d

1043, 1045 (4th Cir. 1985); Gloria Mfg. Corp. v. Int'l Ladies Garment Workers Union, 734 F.2d

1020, 1022 (4th Cir. 1984).  Under this test, a contract is executory if the "'obligations of both

the [debtor] and the other party to the contract are so far unperformed that the failure of either to

complete the performance would constitute a material breach excusing the performance of the

other.'"  Gloria Mfg. Corp., 734 F.2d at 1022 (quoting Countryman, Executory Contracts in

Bankruptcy: Part I, 57 MINN.L.REV. 439, 460 (1973)).

5

Debtor contends the contract is executory because much remains to be performed on the 2003 contract, including the following:  (1) parties to agree to the terms and conditions of a nine-year lease to the debtor of the premises located at 3414-3418 Jefferson Davis Highway; (2) Shaban to obtain financing in the principal amount of $244,200.00 at a fixed rate not to exceed 6.5% per year amortized over a term of not less than 10 years and requiring not more than a total of 2 loan discount points, excluding loan origination fee; and (3) debtor to convey property in fee simple free and clear of all liens.

Several courts have held that an order for specific performance terminates the executory nature of a contract for the sale of real property.  See, e.g.,  Roxse Homes, Inc. v. Roxse Homes L.P., 83 B.R. 185, 187 (D. Mass 1988) (affirming bankruptcy court's holding that a purchase and sale agreement was not an executory contract debtor could assume or reject because the contract was terminated by the state court's pre-petition judgment for specific performance); Kendall Grove Joint Venture v. Martinez-Esteve, 59 B.R. 407 (S.D.Fla. 1986) (finding a contract for sale of real property nonexecutory where state court had entered pre-petition order for specific performance); Winter v. Glaze (In re Glaze), 169 B.R. 956, 960 (Bankr. D. Ariz. 1994) (finding contracts for sale of real property, which the trustee wished to assume were no longer executory after contract was reduced to judgment of specific performance).   In fact, in Glaze, the court found that "a review of cases on the issue of what constitutes an executory contract reflects that the entry of judgment is a critical point."  169 B.R. at 960.  Glaze noted that the Ninth Circuit reached a different result when no pre-petition order for specific performance had been entered by the court, finding that an executory contract did exist.  Id. (distinguishing In re Alexander, 670 F.2d 885 (9th Cir. 1982)).

Moreover, <u>Roxse Homes</u> stated that following an order for specific performance, the rights of the parties were "derived from the pre-petition state court judgment, which cannot be 'rejected' under §365." 83 B.R. at 187. The court went on to find that "[o]nce a judgment for specific performance is entered, the parties['] remaining unperformed obligations become non-material, or 'ministerial' acts through which the parties merely carry out the court's directive." <u>Id.</u> Here, then, where purchaser obtained a judgment for specific performance before the filing of debtor's voluntary chapter 11 petition, the order superceded the contract and is not subject to rejection. Furthermore, the enumerated unperformed tasks which debtor argues make the contract executory under the Countryman definition are of no consequence to the determination as, at least under <u>Roxse Homes</u>, they are now to be considered merely ministerial acts, the non-peformance of which would not constitute breach.

The policy behind creating a Code section to allow rejection of executory contracts was to allow the trustee (or debtor-in-possession) a way of inducing breach, with any resulting damages to the non-debtor party being reduced to an unsecured claim. <u>See generally</u> 3-365 COLLIER ON BANKRUPTCY, 365.09 (15th Ed. Revised). Here, the contract was breached pre-petition when the parties failed to close on the sale. Shaban sought a remedy for breach in state court and was awarded specific performance. Therefore, there is no need for rejection procedures, which would give rise to damages and make Shaban a creditor. Shaban has his remedy. That debtor cannot comply with the order granting specific performance leads to the second issue to be resolved.

2.<u>Debtor's defense of impossibility is subject to res judicata and cannot be re-litigated in the bankrutpcy court.</u>

7

The Circuit Court for the City of Richmond ruled on Shaban's complaint and ordered specific performance. Debtor cites a Virginia case for the proposition that "[g]enerally, a court may not make a decree of specific performance when it is impossible for a party to comply with a contractual condition." Shepherd v. Colton, 378 S.E.2d 828, 830 (1989) (citing Jones v. Tunis, 37 S.E. 841, 841 (1901)). Debtor argues that because she does not have sufficient funds to pay off the liens and deliver clear title to the properties, it is impossible to perform according to the decree. Debtor essentially wants to re-litigate the contract dispute in the bankruptcy court so that she may introduce a defense she failed to present in state court.

Res judicata, or claim preclusion, is a doctrine intended to ensure the finality of judicial decisions while promoting judicial economy. In re Prof'l Coatings (N.A.), Inc., 210 B.R. 66 (Bankr. E.D. Va. 1997) (citing In re Wizard Software, 185 B.R. 512, 516 n.9 (Bankr. E.D. Va. 1995)). "Res judicata prevents litigation of all grounds for, *or defenses to*, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131 (1979) (emphasis added). Therefore, if barred by res judicata, debtor may not assert an impossibility defense when it could have been asserted in state court.

"The Full Faith and Credit statute requires federal courts to give the same effect to state court judgments as those judgments would have in the courts of the state from which the judgment originated." In re Parks, Slip Copy, 1996 WL 33676728 (Bankr. E.D. Va. 1996); see 28 U.S.C. § 1738. Moreover, the statute requires federal courts "to refer to the preclusion law of the State in which judgment was rendered." Id. (citing Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); see Artis v. Norfolk & W. Ry., 204 F.3d 141, 147 (4th Cir. 2000) ("The Full Faith and Credit Statute . . . directs a federal court to follow state preclusion

8

law to determine the res judicata effect of a state court judgment even when the federal court has

exclusive jurisdiction over the subsequent suit."). Because the Decree was issued by a state

court, Virginia law controls the application and scope of res judicata in this matter.

In Virginia, "the bar of res judicata precludes relitigation of the same cause of action, or

any part thereof, which could have been litigated between the same parties and their privies."

Smith v. Ware, 421 S.E.2d. 444,445 (1992) (citing Bates v. Devers, 202 S.E.2d 917, 920-21

(1974)). The Supreme Court of Virginia has identified four elements that must be present before

res judicata can be asserted to bar a subsequent proceeding. They are: "(1) identity of the

remedies sought; (2) identity of the cause of action; (3) identity of the parties; and 4) identity of

the quality of the person for or against whom the claim is made." Balbir Brar Assoc. v.

Consolidated Trading & Serv. Corp., 477 S.E.2d 743, 746 (1996) (citing Ware, 421 S.E.2d at

445). Furthermore, under Virginia law, "a default judgment by a court of competent jurisdiction

would have the same claim preclusive effect as a judgment fully litigated on the merits." In re

Parks, Slip Copy, 1996 WL 33676728 (citing Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.,

770 F.2d 1228, 1233 n.7 (4th Cir. 1985); see In re Wizard Software, 185 B.R. at 516; Hildebrand

v. Kugler (In re Kugler), 170 B.R. 291, 301 n.13 (Bankr. E.D. Va. 1994)).

Addressing the jurisdictional requirement first, the Circuit Court for the City of

Richmond had proper jurisdiction over the case styled Khalad v. Young S. Grant filed on

November 1, 2003. Shaban filed his Bill of Complaint prior to debtor filing her voluntary

petition for chapter 11; therefore any dispute involving debtor was not yet under the jurisdiction

of the bankruptcy court. As the matter at issue was one involving state law, the Circuit Court

was the proper forum and thus a court of "competent jurisdiction." Debtor contends the Circuit

Court's default judgment is not binding in the same manner as a judgment on the merits. This

9

contention does not survive an analysis under Virginia law.  See In re Parks, Slip Copy, 1996

WL 33676728 (citing Tomai-Minogue, 770 F.2d at 1233 n.7); In re Wizard Software, 185 B.R.

at 516; In re Kugler, 170 B.R. at 301 n.13).

Finding that competent jurisdiction did exist and that the Circuit Court's default

judgment has the same preclusive effect as a judgment on the merits, the court next turns to a

consideration of whether the subject matter at issue is subject to res judicata.  The Supreme

Court has held that "res judicata unequivocally 'applies to bankruptcy matters that are outside

the scope of dischargeability.'"  In re Prof'l Coatings (N.A.), Inc., 210 B.R. at 76 (citing In re

Wizard Software, 185 B.R. 512, 517 (Bankr. E.D.Va. 1995) (quoting Brown v. Felsen, 442 U.S.

127 (1979)).  As the core issue in this matter involves rejection of an executory contract under §

365(a) and is not a dischargeability action, the court is free to focus on the state law

requirements for res judicata.  Therefore, the court will examine each element in turn to

determine whether debtor's defense is barred.

### i.Identity of the Remedies Sought

First, there must be an "identity of the remedies sought."  Ware, 421 S.E.2d at 445.

Professionall Coatings instructed a court analyzing this element to "look to the remedy sought in

each cause of action and [to] examin[e] the 'nature of the remedy' in context of the 'design of

the action.'"  210 B.R. at 76.  This is particularly helpful where, as in the present case, the parties

are aligned in a different litigation posture in the two causes of action.  In the state court

proceeding, Shaban was the plaintiff.  Had debtor made an appearance, she undoubtedly would

have raised the affirmative defense of impossibility.  The remedy debtor sought in that

proceeding was to avoid performance of the contract.  Now in the bankruptcy court, debtor raises

the defense of impossibility as a basis for rejecting the contract pursuant to her motion.  In both

actions, her goal is to avoid the contract.  Therefore, the nature of the remedies sought is the

same, and the first element required for invocation of res judicata is present.

## ii.Identity of the Cause of Action

Rather than using the Fourth Circuit's transactional test for determining whether two

causes of action are the same, state law looks to the underlying basis for the cause of action.

Virginia allows a choice of three standards to determine whether there is an identity of the

causes of action.  A court may ask whether: (1) the same body of law supports the two causes of

action; (2) both causes of action contain substantially the same legal and factual issues; or (3) the

same evidence will support both actions.   Id. at 76-78.

The court may choose any of the three tests on which to base its determination of whether

this element is met.  The present case meets the requirement for identity of the cause of action

based on the second and third tests.   The actions here fail the first test because two different

bodies of law govern the proceedings.  The state court judgment was based upon contract law,

and the motion to approve rejection of an executory contract falls under the purview of the

Bankruptcy Code.  However, both actions involve substantially the same facts and legal issues,

meeting test two.  Both causes of action arise from the same transaction or occurrence, the 2002

contract and its 2003 modifications for sale and purchase of real estate.  The same legal issue is

present in both proceedings as essentially the debtor in both actions is seeking to avoid

enforcement of the contract.  Under the third test, debtor could have supported her defense in

state court with the same evidence she offers the bankruptcy court in support of her motion to

approve rejection.  Debtor argues impossibility of performance, and in so doing, provides

evidence of outstanding liens that she is unable to pay even if she received the purchase price

11

agreed to in the 2003 contract.   Thus, the third test is also met and the integral element of

identity of causes of action has been satisfied.

### iii. Identity of the Parties

"One of the fundamental prerequisites to the application of the doctrine of res judicata is that

there must be an identity of parties between the present suit and the prior litigation asserted as a

bar.  A party to the present suit, to be barred by the doctrine, must have been a party to the prior

litigation, or represented by another so identified in interest with him that he represents the same

legal right." Dotson v. Harman, 350 S.E. 2d 642, 644 (Va. 1986) (citing Mowry v. City of Va.

Beach, 93 S.E. 2d 323, 327 (1956)).  In the present case, the parties are identical.  No more needs

to be said about this element.

### iv. Identity of the Quality of the Person for or Against Whom the Claim Is Made

The "capacities rule," as this requirement is generally known, "provides that a judgment is not

binding on a party in a later suit brought by him in a different capacity." Hudgins v. Davidson,

127 B.R. 6, 7 (E.D. Va. 1991).   Had debtor defended the state court action, she would have been

acting on her on behalf.  The default judgment against debtor in Circuit Court, therefore, is

binding where, as here, she is bringing a motion to assert her individual interest and is not

representing another party.  Because debtor is acting in the same capacity in both causes of

action, this last requirement for res judicata is met.

### 5. Conclusion

In sum, when debtor missed her chance to defend herself in state court, she turned to the

bankruptcy court as a forum for entertaining her defense in the form of a motion to approve

rejection of the contract at issue.  The only way she could have her "day in court" was to style

her defense as a motion by characterizing the contract as executory precisely because she had not

complied with the state court decree.  Debtor's motion in the bankruptcy court seems to stem

only from her disappointment at the state court level.   This court must give full faith and credit

to the Circuit Court's judgment to enforce specific performance of the contract.  See 28 U.S.C.

§1738; Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996).   The parties should

make every effort to resolve this controversy given the obstacles to performance that debtor

faces.  This court can only rule on the motion before it, and as such has found there is no

executory contract in existence to reject.

Accordingly, the Motion to Approve Rejection of Executory Contract will be DENIED.

An appropriate order will accompany this Memorandum Opinion.


Signed: _____


/s/ Douglas O. Tice Jr.            
DOUGLAS O. TICE JR.
Chief Judge, United States Bankruptcy Court


Copy to:

Mr. Teddy J. Midkiff, Esquire
MARVIN ALAN ROSMAN & ASSOCIATES, P.L.C.
4912 West Broad St., P.O. Box 6964
Richmond, Virginia 23230-0964
Counsel for debtor

Mr. Robert A. Canfield, Esquire
Mr. Irwin A. Heller, Esquire
CANFIELD, BAER, HELLER & JOHNSTON, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
Counsel for Khaled Shaban

Leander D. Barnhill, Esquire
Office of the United States Trustee
600 East Main Street, Suite 301
Richmond, Virginia 23219
Assistant U.S. Trustee